SAMUEL, Judge.
These three consolidated cases arise out of an automobile accident which occurred January 9, 1964 on the Chef Menteur Highway (La. — U.S. 90) in a then undeveloped portion of the City of New Orleans. Apparently due to illness of counsel, insolvency of one of the defendant insurers, death of one of the plaintiffs and other causes, the matter did not come to trial on the merits until December 21, 1972.
Chef Menteur Highway runs roughly in an east-west direction. It contained four lanes, two for traffic traveling west, or inbound to New Orleans, and two for traffic traveling east, or outbound from New Orleans. On the date of the accident portions of the highway were being reconstructed. That work was being done in the two eastbound lanes in the area in which the accident occurred and these eastbound lanes were closed. Eastbound traffic was diverted to the southernmost of the two lanes ordinarily used for westbound traffic while the other, or northernmost of the usual westbound lanes, was being used for westbound traffic.
A vehicle driven by Maurice Gauthier was proceeding outbound from New Orleans in an easterly direction. His guest passengers were Beulah B. Gremillion and her husband, James H. Gremillion. At the same time a vehicle driven by James A. Harvel was traveling in a westerly direction toward New Orleans. James R. Parker was a passenger in the Harvel automobile.
While in this construction area, in order to pass a large truck, Harvel drove his car from its proper northernmost lane into the southernmost lane then being used for diverted eastbound traffic and then being traveled by the Gauthier vehicle. The two vehicles collided head-on. All three passengers in the two automobiles were injured in the collision. The injuries sustained by Mr. Gremillion, together with complications arising therefrom, resulted in his death approximately one month later.
Mrs. Gremillion filed suit for her injuries and for the death of her husband in one proceeding against Harvel, Gauthier, Marquette Casualty Company (Gauthier’s automobile liability insurer), Delta Paving Company (the contractor doing the highway construction work), and American General Insurance Company (Delta Paving’s liability insurer). Alleging Harvel was an uninsured motorist, Mrs. Gremillion filed the second suit against Marquette Casualty and Allstate Insurance Company, the Gremillions’ automobile liability insurer, under the uninsured motorist coverage allegedly afforded by the policies issued by those two insurers. Parker, the guest passenger in the Harvel vehicle, filed the third suit for his injuries against Gauthier, Marquette Casualty, Delta Paving and American General. Subsequently, Marquette Casualty became insolvent and proceedings against that defendant were stayed.
*296 Allstate paid Mrs. Gremillion the sum of $7,000 under its uninsured motorist coverage, received a release from her and then, as her subrogee, filed a third party petition against Delta Paving and American General. Mrs. Gremillion subsequently died from unrelated causes. On motion filed by her daughters, Mrs. Lois Bilton Schreffler and Mrs. Ruth Bilton Buckley, the trial court ordered that they be substituted as parties plaintiff in lieu of their mother.
After trial, one judgment was rendered in the three suits. The judgment is in favor of Mrs. Gremillion’s daughters and against Harvel, Delta Paving and American General, in solido, for $11,843.31, recognizing Allstate’s right to be paid the sum of $7,000 in priority to the two substituted plaintiffs. The judgment also is in favor of Parker and against Delta Paving and American General, in solido, for $10,000. The suits against Gauthier were dismissed. Delta Paving and American General have appealed. Parker has filed an answer to those appeals seeking an increase in the amount awarded to him.
Appellants specify several alleged errors on the part of the trial court, but their basic defense is that Delta Paving was not guilty of any negligence. As we agree with that specification it is unnecessary for us to discuss or decide any of the others.
As stated in his reasons for judgment, the trial court found that barricades had been properly placed at both ends of the inbound and outbound lanes. However, he also found the contract between Delta Paving and the Department of Highways called for traffic cones to be placed at specified intervals between the double lanes normally used for one-way inbound traffic, which lanes had been converted for use as a two-way traffic artery, that Delta Paving had failed to comply with this contract requirement, and that such failure constituted negligence which contributed to the cause of the collision and resulted in liability on the part of Delta Paving and its insurer.
Although there is some conflicting evidence, we agree with the trial court’s finding that barricades had been properly placed at the ends of the inbound and outbound lanes. We also find, as he apparently did, that excluding traffic cones, Delta Paving had used all signs and barricades, and had taken all other precautions, required by the contract to forewarn motorists of the fact that two-way traffic had been diverted into the two highway lanes normally used for one-way traffic into New Orleans. However, we disagree with the finding that the contract called for the use of traffic cones. In this connection we note that, apparently because of the long interval between the collision and the trial, no testimony was offered by anyone privy to the contract for the purpose of explaining any ambiguities. The answer to the question presented is to be found only in documentary evidence and the manifest error rule does not apply.
At the trial plaintiffs offered in evidence photostatic copies of a portion of the contractual plans and specifications between Delta Paving and the Department of Highways. The copies had been obtained from the mortgage office in Orleans Parish. One of the pages thus offered was entitled “STANDARD PLAN — HIGHWAY SIGN AND BARRICADE DETAILS FOR CONSTRUCTION PROJECTS.”
While Henry Saacks, engineer for the Department of Highways who was in charge of the road project at the time of the collision, was on the witness stand he was questioned by a counsel for plaintiffs regarding the contractual obligation of placing cones on the roadway. Counsel suggested that Saacks refer to what counsel called an “exact copy in relation to another contract” of the pertinent document since the substituted document was clearer and easier to read than the copy of the actual contract document obtained from the mortgage office. The document thus used for clarity consists of one page and also bears the title “STANDARD PLAN— *297 HIGHWAY SIGN AND BARRICADE DETAILS FOR CONSTRUCTION PROJECTS.” It was shown to all counsel before being used.[1] Under “Figure 5” in the upper right corner it contains a paragraph consisting of four sentences beginning with “Typical signing of one approach to a construction activity on a 4 lane divided highway where one roadway is closed.” That paragraph ends with the following sentence:
“Traffic cones, of the weighted base type, shall be placed 100 feet apart on the centerline of each section carrying two way traffic.”
The document so used for clarity is not identical to the actual contract document itself in several respects. More particularly, our examination of the corresponding page of the actual contract document, aided by the use of a magnifying glass, shows the paragraph in question contains only three sentences, which are identical with the first three sentences of the same paragraph in the document used for clarity. The last sentence of the document used for clarity purposes, which sentence is quoted above, is not contained in the actual contract document. The record further reveals that the above quoted traffic cone requirement was not made a part of such contracts until several years after the contract in suit had been entered into. Thus, the nonplacement of traffic cones by Delta Paving was not a negligent unilateral elimination of a contract requirement as found by the trial court; the contract between Delta Paving and the Department of Highways did not contain such a requirement.
In addition, except by implication arising out of the testimony of some witnesses, the record is completely devoid of any evidence whatsoever establishing that the failure to use traffic cones constitutes negligent conduct in the absence of a contracr tual duty to do so. The only competent evidence in the record is to the contrary, that the use of traffic cones in a situation such as the one now before us enhances the probability of the occurrence of accidents, a probability increased by evasive actions likely to be taken by drivers to avoid striking cones which are blown or knocked into their paths. Thus, we conclude Delta Paving was not guilty of any negligence which proximately caused the accident in suit.
For the reasons assigned, that portion of the judgment appealed from which awards damages against the appellants is reversed and it is now ordered that there be judgment in favor of said appellants, Delta Paving Company and American General Insurance Company, and against the original plaintiffs, Mrs. Lois Bilton Schreffler, Mrs. Ruth Bilton Buckley and James R. Parker, and against the third party plaintiff, Allstate Insurance Company, dismissing the demands of said original and third party plaintiffs against those plaintiffs-ap-pellees.
Reversed in part.

. No suggestion is made by opposing counsel with any improper motive. or by this court that the document was used